It's a little hard to hear you. Could you talk louder? Yes, Your Honor. Good morning. This case is about a person who is going to be deported to a country which would most likely detain him and he would most likely torture him. The immigration judge found that the respondent's convictions in the United States would make him a subject to thorough investigation by the Azerbaijan authorities, Azerbaijan being the country where he would be deported, which would most likely result in finding out about the respondent's criminal history and will end up with him being in criminal detention and most likely being tortured because of his religious beliefs as being an Armenian Christian. Is there evidence in the record that the country looks at criminal history of people returning and imprisons them as you just suggested? I believe there is evidence. Yes, Your Honor, there should be evidence. I'm looking for a specific citation to it. But it's more like a standard procedure for every citizen coming, everyone coming back to the United States, sorry to Azerbaijan. I think your brief at page 11 says there is no evidence that Azerbaijan citizens with U.S. criminal histories are targeted for detention or torture upon their return. Is that wrong? It's not, Your Honor, but I believe I found something later, but it's not. I stand corrected, Your Honor. There is no such procedure. Can I ask you, you're in a somewhat unusual procedural posture here in that you prevailed before the IJ, but then the board reversed that. But I did not understand from your briefs that you were making an argument that the board had committed a procedural error in applying the wrong standard or misapplying clear error review to the IJ's findings. And instead, your argument is just the ultimate conclusion is not supported by substantial evidence. Is that a correct characterization of what you're arguing? Yes, Your Honor. Well, I take it. Oh, go ahead. No, I didn't mean to. Oh, but I take it there's no evidence that they would find out. There is no evidence, per se, Your Honor, but the recent escalation of the war between Armenia and Azerbaijan would result in every Armenian entering the United States being considered as a threat. So it's undoubtful that they would be checked more than any other. I misspoke. I take it there's no evidence that they would not find out. And your argument is premised in part not because he had a criminal record, but because of his ethnicity, that they would look into him. There is a red flag, let's say, of him being Armenian. And once they start checking his background, they will undoubtedly find his criminal records. But you don't, and just to be clear, you don't have any, other than his criminal background and his ethnicity and religious faith, which you haven't really gotten too much, you don't have any evidence that they would have any particular interest in him as opposed to anyone else in those categories. Is that right? Either way, Your Honor, my argument is that they would have a particular interest in him being an Armenian coming to Azerbaijan, the country which the state of war was Armenia. So that will elevate the level of background check towards this, the respondent. And what is the, I mean, there is evidence that you presented in the country conditions reports support that both Armenians and Christians, and he's both, are subject to persecution and harassment. And so like, I guess if this were an asylum claim, you might have a strong argument. But what is the evidence that people in those categories are more likely than not to be subject to torture? Well, Your Honor, there is a high chance that he would be incarcerated. Conditions in Azerbaijani jails are, in the reports, human reports are describing the terms, conditions in Azerbaijani jails are very bad. The Azerbaijani law enforcement agencies are basically, there is no control over them when they torture people. And so, I guess my argument is, our argument is that him being Armenian puts him in a special category. And seeing that the other Armenians, whether they were Azerbaijani citizens as a part of the country which, as a part of Nagorno-Karabakh, which was a part of the war, they were killed after the war just because they were Armenians, this would elevate my client's respondents' level of probability of being tortured as compared to any other citizen of any other country or a person of any other ethnicity. The IJ found that he would be, there was a likelihood of his being tortured, is that correct?  And the BIA said that that was not supportive. How do we review that? What do we look to? Do we have to say the BIA was, do we look to the IJ to see whether the BIA was correct? Do we say that it was not supported? Or do we say the evidence has to compel a conclusion that the BIA was wrong? Our position is that the evidence compels that the BIA was wrong and the recent development adds to that, to IJ's argument. To the extent you're relying on recent developments, should you be seeking reopening? That was one of the options we looked up. We might pursue that, Your Honor, but this was already in the process, so my client wants to, the respondents want to continue this case to see what the outcome of this hearing would be. I see, but you, okay, but you would apply for reopening based on intervening circumstances if you were to not prevail here. Is that the idea? Probably. Do you want to save your remaining time for rebuttal? Yes, Your Honor. Very well. We'll hear from the government then. Thank you. Thank you, Your Honor. Right. He did not appeal that to the BIA. That is correct, so those are not live issues here. The issue that is before the court is whether the record evidence compels the conclusion that Balazsian would more likely than not be tortured by or with the consent of Azeri authorities if he were returned to Azerbaijan. And the evidence here simply falls far short of meeting that very deferential standard of review. Could he have argued that the BIA applied the clear error standard incorrectly, or would we not really have been able to do anything about that if he had argued it that way? He could have argued that. However, there would not be any merit to that claim as far as the record is concerned. It shows that the board thoroughly understood the meaning of that standard of review and indicated that it was not undertaking a reversal of the immigration judge lightly, and that clear error does not mean that the board could just insert its own opinion of the evidence. So the board also went thoroughly through the evidence as well, and so there would be no merit to that claim. And so where did the, in two sentences, where did the I.J. go wrong? Because the I.J. was pretty thorough. The I.J. was thorough in that her decision was long. However, she did not provide evidentiary support or clarify where the evidentiary support was for her decision. And a review of the evidence reveals that there is no support for that decision, as there is no evidence that he would be detained, let alone tortured, if returned to Azerbaijan. It's an odd case because there's a dissent at the BIA level, too. So basically four agency judges looked at this, and two thought that he should get relief, and two thought that he shouldn't. And so it's maybe the closest, it's more of a split than we usually have. I agree. This is very unusual. We don't see it in our office very often either. And I think that's why it's important that the board, the majority in the board's decision, did indicate that they did not take the reversal lightly. They went through the evidence thoroughly. They did reiterate that they could not just insert their own opinion in the place of the immigration judge. But a review of the evidence, again, just reveals that there simply is not sufficient evidence to support Alassian's position here. Thank you. If the court has any further questions, I'd be happy to answer those. Seems like we may not. Thank you. Thank you very much. Thank you for your argument. Thank you.  I believe you're muted. Sorry. The only thing I want to add, Your Honor, is that there is an evidential support for IG's decision. And it's basically every point that IG made was, she either showed the evidence or she explained her point. The only thing I want to add is that I respectfully disagree with my opponent that there was no evidential support for IG's decision. Okay. Thank you. Thank you both. Thank you both for the helpful arguments. This case is submitted. Our next case on calendar and last case on calendar is Krishna.
judges: SCHROEDER, FRIEDLAND, MILLER